**Grayson JEFFERS, Defendant Below–Appellant**

v.

**STATE of Delaware, Plaintiff Below–Appellee.**

No. 66, 2007.

Supreme Court of Delaware.

Submitted: Aug. 3, 2007.

Decided: Sept. 24, 2007.

Bernard J. O'Donnell, Office of the Public Defender, Wilmington, DE, for appellant.

Gregory E. Smith, Department of Justice, Wilmington, DE, for appellee.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

HOLLAND, Justice:

The defendant-appellant, Grayson Jeffers, was found guilty by a Superior Court jury of Disregarding a Police Officer's Signal and Driving With a Suspended License. The jury failed to reach a verdict on the additional charge of Possession of a Deadly Weapon by a Person Prohibited. Jeffers subsequently was re-tried on the weapons charge and was found guilty. He was sentenced to five years of Level V incarceration, to be suspended after three years for one year at Level III probation. This is Jeffers' direct appeal from his conviction and sentence on the weapons charge.

### Rule 26(c) Brief

Jeffers' counsel has filed a brief and a motion to withdraw pursuant to Rule 26(c). The standard and scope of review applicable to the consideration of a motion to withdraw and an accompanying brief under Rule 26(c) is twofold: (a) the Court must be satisfied that defense counsel has made a conscientious examination of the record and the law for claims that arguably could support the appeal; and (b) the Court must conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[1]

Jeffers' counsel asserts that, based upon a careful and complete examination of the record, there are no arguably appealable issues. By letter, Jeffers' counsel informed Jeffers of the provisions of Rule 26(c) and provided him with a copy of the motion to withdraw, the accompanying brief and the complete trial transcript. Jeffers was also informed of his right to supplement his attorney's presentation. Jeffers responded with a brief that raises three issues for this Court's consideration. The State has responded to the position taken by Jeffers' counsel, as well as the issues raised by Jeffers, and has moved to affirm the Superior Court's judgment.

### Issues on Appeal

Jeffers raises three issues for this Court's consideration. He claims that: first, there was no probable cause for the police to arrest him; second, the testimony of the police officers was inconsistent; and third, the Superior Court erred by imposing a three-year minimum mandatory sentence for possession of a firearm.

### Facts

The evidence presented at trial was as follows. On November 11, 2004, at approximately 9:00 p.m., Captain James Jubb of the City of Wilmington Police Department was conducting a uniformed patrol of South Franklin Street in the Hilltop sec-

1. *Penson v. Ohio,* 488 U.S. 75, 83, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988); *McCoy v. Court of Appeals of Wisconsin,* 486 U.S. 429, 442, 108 S.Ct. 1895, 100 L.Ed.2d 440 (1988); *Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

tion of Wilmington, Delaware. The area had been identified by the police as a "hot spot" for crime. As he patrolled South Franklin Street, Captain Jubb shined his flashlight in the cars parked on the street. Passing a burgundy, four-door Mercury Grand Marquis, Captain Jubb noticed a black, semi-automatic handgun protruding from under the front passenger seat.

Captain Jubb radioed the police station and reported the license number of the Grand Marquis and arranged for surveillance. He continued to watch the car until he was relieved by Officer Curtis Crawford, a plainclothes police officer. After Officer Crawford had watched the car for about fifteen minutes, a white Ford Taurus pulled up. A tall, African–American man got out of the Taurus and into the Grand Marquis. Communicating with the police station over the radio, Officer Crawford learned that the man was Grayson Jeffers and that the Grand Marquis belonged to Jeffers' mother. He also learned that Jeffers had a suspended driver's license as well as a prior felony conviction that prevented him from possessing a firearm. Officer Crawford requested a marked police car to follow Jeffers.

Shortly thereafter, several marked City of Wilmington police cars arrived at the scene. The officers driving the cars followed Jeffers and activated their emergency lights while Jeffers was stopped at the intersection of Martin Luther King Boulevard and Madison Street. Jeffers did not pull over, but instead proceeded southbound on I–95, where he led police on a high-speed chase, with Corporal Faye Lynch in the lead. Just north of the Route 141 exit, Corporal Lynch observed Jeffers slow his car to approximately 25–35 miles per hour, move onto the shoulder of the road, and accelerate again. She also observed Jeffers reach down within his car several times before he slowed down near the Route 141 exit. Jeffers finally stopped his car approximately a quarter of a mile from where he had slowed down.

The police took Jeffers into custody and searched the Grand Marquis. When the search yielded no weapon, one of the police cars backed down the shoulder of I–95 to the area where Jeffers had slowed down. There, police found a .45 caliber, black, semi-automatic Haskell handgun on the ground. The weapon was scratched in several places and the magazine and ammunition were found among some weeds on the other side of the guardrail.

The record reflects that, following Jeffers' conviction of the weapon charge and in anticipation of sentencing, the Superior Court judge asked counsel to file memoranda on the issue of whether the use of the term "handgun" in the indictment was sufficient notice to Jeffers that he was being charged with unlawful possession of a firearm, thus triggering the sentencing provisions of Del.Code Ann. tit. 11, § 1448(e)(2).[2] In its November 3, 2006 memorandum opinion, the Superior Court reasoned that, in accordance with the definitions contained in Del.Code Ann. tit. 11, § 222, the definition of "deadly weapon" includes "firearm," and the definition of "firearm" includes handguns, which are weapons from which shots are discharged. The Superior Court concluded that the indictment provided notice to Jeffers that he was being charged with unlawful possession of a firearm and that he was, therefore, subject to an enhanced three-year minimum mandatory sentence.

---

2. The statute provides for enhanced sentencing of three years of Level V incarceration if the prohibited person possesses a firearm within ten years of the date of conviction for a violent felony or the date of termination of all periods of incarceration pursuant to that conviction. Jeffers did not dispute his prior October 1997 felony conviction.

### Probable Cause Established

■ Jeffers' first claim is that the police lacked probable cause to arrest him. An arrest without a warrant is lawful under Delaware law where the police officer "... has reasonable ground to believe that the person to be arrested has committed a felony...."[3] The evidence at trial was that (1) Captain Jubb observed a gun in the Grand Marquis, (2) Officer Crawford learned through radio contact with the police station that Jeffers was the driver of the car and (3) Jeffers had a prior felony conviction that prevented him from possessing a firearm. Thus, the police had reasonable ground to believe that Jeffers had committed the felony of Possession of a Deadly Weapon by a Person Prohibited. As such, we conclude that Jeffers' first claim is without merit.

### Jury Determines Credibility

■ Jeffers' second claim is that he should not have been convicted on the basis of the police officers' inconsistent testimony. Inconsistencies in testimony go to the weight of the testimony, not to its admissibility.[4] "The jury is the sole judge of a witness' credibility and is responsible for resolving [any] conflicts in the testimony."[5] In fulfilling its duty, the jury must consider all of the evidence, but is free to accept part of a witness' testimony while rejecting other parts.[6] Because there is no suggestion in the record that the jury failed to properly perform its function of weighing the evidence at Jeffers' trial, we conclude that Jeffers' second claim is without merit.

### Indictment Properly Amended

■ Jeffers' third claim is that he should not have been sentenced for posses-

sion of a firearm when the indictment referred only to "a handgun, a deadly weapon." We agree with the Superior Court's reasoning in its November 3, 2006 memorandum opinion that, under the definitions of Del.Code Ann. tit. 11, § 222, the indictment, which referred to a "handgun," provided notice to Jeffers that he was being charged with unlawful possession of a firearm and that he was, therefore, subject to an enhanced three-year minimum sentence under Del.Code Ann. tit. 11, § 1448(e)(2). We, therefore, conclude that Jeffers' third claim is without merit.

### Conclusion

This Court has reviewed the record carefully and has concluded that Jeffers' appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Jeffers' counsel has made a conscientious effort to examine the record and has properly determined that Jeffers' could not raise a meritorious claim in this appeal.

The State's motion to affirm is granted. The judgment of the Superior Court is affirmed. The motion to withdraw is moot.

---

3. Del.Code Ann. tit. 11, § 1904(b)(1).

4. *Demby v. State,* 695 A.2d 1127, 1132–33 (Del.1997).

5. *Pryor v. State,* 453 A.2d 98, 100 (Del.1982).

6. *Id.*